MARY F. BATTLE *v.* CRYSTAL ICE COMPANY *et al.*

(No. 9075)

Submitted October 8, 1940.  Decided December 14, 1940.

*Jed W. Robinson,* for appellant.
*G. W. Ford,* for appellee.

RILEY, PRESIDENT:

W. C. Lawson, substituted plaintiff in the chancery suit of Mary F. Battle v. Crystal Ice Company et al., appeals from a decree of the Circuit Court of Taylor County, entered October 20, 1939, allowing The First National Bank of Grafton, as trustee, commissions on $22,160.26, the proceeds of sale by a special commissioner made under a decree of sale entered in said suit on October 20, 1938, which proceeds had been paid to the trustee by the special commissioner under a decree of May 17, 1939.

On April 1, 1927, Crystal Ice Company executed a deed of trust upon its real and personal property to The First National Bank of Grafton and Charles W. Steel, trustees, securing bonds in the total amount of $45,000.00, which were delivered to the bank in trust to secure certain listed obligations of the ice company. Steel was named co-trustee only for the purpose of performing such duties under the deed of trust as the bank could not legally perform under its charter provisions and general law. He remained inactive during the happening of the events under consideration. This deed of trust, among other things, provided for a reasonable fee for services to be performed by the trustees; and commissions, not less than five per centum, on all rents, issues and profits of the ice company's property which may be administered by the trustees, in the event the control of the property should be assumed by the trustees due to a default under the deed of trust. Also, section 20 of the deed of trust provides that, in event of foreclosure by judicial proceedings, the decree of foreclosure shall provide for a reasonable sum for complainant's attorney's fees and for the trustee's fees in such suit.

On January 21, 1937, the ice company executed and delivered to the bank another deed of trust, under which the bank assumed charge of all the property, paid all accrued taxes, had an appraisement made, proceeded to dispose of the personal property, and advertised the real property for sale, under the deed of trust (1927) for May 5, 1937. Later the advertisement was withdrawn, the sale abandoned and this suit instituted with process returnable to July Rules, 1937. A decree of reference having been entered, the bank filed three statements of its receipts and disbursements covering periods extending from January 22, 1937, to October 17, 1939.

By decree of October 20, 1938, the chancellor found that the liens of the original plaintiff, Mary F. Battle, and certain defendants, aggregating $38,852.92, were first in priority and decreed that unless the defendant ice company, or someone for it, should pay the several debts,

then John L. Heckmer, special commissioner, should make sale of the real estate at public auction. The condition of the decree not having been complied with, the property was sold on an upset bid at the bar of the court on May 15, 1939, for $24,000.00, which sale was confirmed by decree of May 17, 1939, and the special commissioner ordered to make certain payments out of the proceeds thereof, including commissions to himself in the amount of $1,502.50, being two and one-half per cent on the original sale for $12,100.01 and five per cent on the confirmed sale for $24,000.00, and the residue ($22,160.26) was decreed to be paid by the special commissioner to The First National Bank of Grafton as trustee. This decree contained a recital to the effect that W. C. Lawson had assigned certain decrees, theretofore assigned to him, to the bank as collateral, and that he had agreed that all sums payable to him by the special commissioner, should be paid to the bank as trustee; and decreed that the special commissioner pay to the bank as trustee, all sums payable to Lawson out of the proceeds of sale.

By the first decree of October 20, 1939, the bank was allowed commissions in the amount of $413.72, being five per cent on the rents and accounts receivable collected and the proceeds of the sale of the personal property, and by a second decree, the decree from which this appeal is taken, entered the same day, the bank was allowed additional commissions on $22,160.26, being the balance of the proceeds of the sale of the real estate which it received from the special commissioner, the commissions being calculated at five per cent on the first $300.00 and two per cent on the residue, in conformity with Code, 1931, 38-1-7.

In appraising the question whether the bank was entitled to these latter commissions, let us now consider what it did with the money received from the special commissioner. The record shows the money was paid to Lawson, but Lawson at that time was indebted to the bank, which indebtedness was secured by the hypothecation with the bank of the rights of the lien claims ascer-

tained by the decrees of the court, and these claims, in turn, were secured by the $45,000.00 bond issue lodged with the bank. Under the circumstances, it is quite difficult to see why the bank would pay this money to Lawson, unless it sought to avoid the position of seeking commissions for the handling of its own collateral. True, the record does not expressly show that the money was paid to Lawson for the purpose of having him pay his debt to the bank. The bank's cashier, however, in answer to the Court's inquiry why the bank insisted that the money be paid to it as trustee, testified, "We wanted our commission because we had been handling the matter all the time, to be perfectly frank about it." Under the circumstances, we think the payment of the money to the bank and from the bank to Lawson was made solely for the purpose of handling the collateral held by it to secure one of its own loans. Whatever services it rendered were for its own interest.

Moreover, this is not a case in which the trustee advertised a property for sale and then, for some reason beyond its control, the sale was stopped. Here the trustee voluntarily withdrew the advertisement, and submitted to a suit which involved a judicial sale. It had the full legal right, under the terms of the trust deed, to make the sale itself. If it had desired to obtain commissions on the real property, it should have made the sale. At least before or at the time of the appointment of the special commissioner, it should have intervened and made some arrangement to have itself participate in the five per cent commissions allowed to the special commissioner, either under decree of the court or by an arrangement had with the special commissioner. However, the bank did not assert its claim until after the proceeds of sale had been diminished by the payment of court costs and commissions to the special commissioner, and the balance paid to it. Section 20 of the deed of trust was inoperative under these circumstances. Whether it is invalid as interfering with the control and discretion of the court, vested under Code, 55-12-6, we need not decide. Suffice to say this

statute does not contemplate double commissions, where no services inuring to the benefit of the trust were performed. On the contrary, it provides that if a judicial sale be made by one commissioner or officer and the proceeds collected by another, the court under whose decree or order they acted shall apportion the commissions between them as may be just. And section 20 of the deed of trust, in our opinion, did not operate to circumvent the evident purposes underlying the enactment of the statute.

For the foregoing reasons we are of opinion that the learned trial chancellor erred, and that the decree complained of should be reversed and it is so ordered.

*Reversed and remanded.*